# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

AMERICAN COMPONENTS
MANUFACTURING &
ENGINEERING, LLC,

     PLAINTIFF,

v.

BRUDERER MACHINERY, INC.,

     DEFENDANT,

v.

AMERICAN COMPONENTS
MANUFACTURING &
ENGINEERING, LLC, HAIRY AND
BAXTER, LLC, SPECIALTY
CARTRIDGE, INC., JASON KOON and
JARRETT GOKEY.

     COUNTERCLAIM DEFENDANTS.

CIVIL ACTION NO.

1:23-cv-04161-VMC

---

## FIRST AMENDED COUNTERCLAIM

---

COMES NOW Defendant Bruderer Machinery, Inc. ("Bruderer"), by and through its undersigned counsel, and without waiving and specifically reserving its Affirmative Defenses (ECF No. 2) files its First Amended Counterclaim against Plaintiff American Components Manufacturing & Engineering, LLC ("Plaintiff" or

"ACME"), Hairy and Baxter, LLC ("H&B"), Specialty Cartridge, Inc. ("SCI"), Jason Koon ("Koon"), and Jarrett Gokey ("Gokey") (collectively, "Counterclaim Defendants"), showing the Court as follows:

## The Parties

1.    Bruderer is a New Jersey corporation formed under the laws of the State of New Jersey.

2.    Counterclaim Defendant ACME is a limited liability company. ACME's sole member is Counterclaim Defendant Jason Koon, an individual. Jason Koon is a citizen of the state of Georgia. ACME's Registered Agent is Koon, whose address is listed as 5160 Pratt Street, Covington, GA, 30014, USA.

3.    Counterclaim Defendant H&B is a limited liability company. H&B's sole member is Counterclaim Defendant Jason Koon, an individual. Jason Koon is a citizen of the state of Georgia. H&B's Registered Agent is Koon, whose address is listed as 9126 Industrial Boulevard, Covington, GA, 30014, USA. H&B may be served at the office of its Registered Agent. Jurisdiction is proper upon service of process.

4.    Counterclaim Defendant SCI is a corporation formed under the laws of the State of Georgia with its principal place of business in the State of Georgia. SCI's Registered Agent is Koon, whose address is listed as 9126 Industrial Boulevard,

Covington, GA, 30014, USA. SCI may be served at the office of its Registered Agent. Jurisdiction is proper upon service of process.

5.      Counterclaim Defendant Koon, an individual, is a citizen of the State of Georgia and may be served at his residence located at 208 Saint Andrews Ct Social Circle, GA 30025. Koon is a natural person capable of being sued in this matter. Jurisdiction is proper upon service of process.

6.      Counterclaim Defendant Gokey, an individual, is a citizen of the State of Georgia and may be served at his residence located at 95 Alcovy Reserve Way Covington, GA 30014. Gokey is a natural person capable of being sued in this matter. Jurisdiction is proper upon service of process.

**Facts**

**Bruderer and "Atlanta Arms" Form Their Business Relationship**

7.      Bruderer is in the business of manufacturing and selling precision punch press machines.

8.      On or about October 18, 2021, Bruderer received inquiries from "Atlanta Arms," one via Bruderer's website and one via telephone, regarding "Atlanta Arms'" interest in purchasing an ammunition press machine. The website inquiry was made by Koon and the telephone inquiry was made by Gokey.

9.      Over the next several months, Bruderer engaged in numerous email and telephone communications with "Atlanta Arms," by way of Koon and Gokey, regarding pricing, timing, travel requirements, and machine-specific details.

10.      Koon's "Atlanta Arms'" email account's signature presents himself to the world, including Bruderer, as "CEO" of "Atlanta Arms."



11.      Gokey's "Atlanta Arms'" email account's signature presents himself to the world, including Bruderer, as "President" of "Atlanta Arms."



12.      Koon's personal email account, "jasonlkoon@gmail.com," was also used to communicate with Bruderer regarding the at-issue transaction.

13.      On or about March 2, 2022, Bruderer entered into a contract (the "Agreement") with what was represented by Koon and Gokey as "Atlanta Arms" for the sale of the at-issue Invernizzi Presse ("Invernizzi") ammunition press machine. (*See* Exhibit "A").

14.    Specifically, on or around February 3, 2022, Bruderer provided a written Quotation #21-0203 in the amount of €1,312,500.00, as well as its Terms & Conditions of Proposal and Sales to "Atlanta Arms" via email correspondence to its alleged "CEO," Koon, and "President," Gokey, which contained the final terms of the Agreement.  (*See id.*).

15.    The Agreement between Bruderer and "Atlanta Arms" laid out the following terms for payment: "10% at the order"; "60% at positive FAT in supplier's plant in Italy, before shipment"; and "30% at SAT positive sign out in customer's plant." (*See id.* at pp.7).

16.    On or about February 8, 2022, a representative of Bruderer traveled from New Jersey to Covington, GA to meet in-person with Koon and Gokey at the "Atlanta Arms" facility located at 9126 Industrial Blvd Covington, GA 30014 to discuss paperwork and other pertinent information needed to begin production of the at-issue press machine.

17.    "Atlanta Arms" made payment of the initial 10% installment, in the amount of $150,281.25, on or about March 2, 2022, thereby accepting the terms of the Quotation and Terms & Conditions of Proposal and Sales and binding the Agreement. This payment was made on behalf of "Atlanta Arms" by wire transfer from "AMERICAN COMPONENTS MFG & ENG, LLC," (i.e., Plaintiff), also

located at 9126 Industrial Blvd Covington, GA 30014. Prior to said wire transfer, Bruderer was never advised of the existence of ACME.

### The Importation Process

18.  On or around March 21, 2022, Bruderer began assisting with gathering pertinent information from "Atlanta Arms" to provide to Invernizzi, the Italian press manufacturer, and the Italian government, to begin the importation process of the subject press machine.

19.  On or about March 23, 2022, Invernizzi requested an "end user certificate" on "Atlanta Arms" letterhead for submission to the Italian Ministry of Defense.

20.  In response, "Atlanta Arms," by way of Gokey, represented that, instead of "Atlanta Arms," a company by the name of American Components Manufacturing ("ACM")[1] would be the "end user" and that it is a:

(a) "registered American company residing at 9126 Industrial Blvd Covington, GA 30014 . . . .";

(b) That ACM "specializes in the production of Ammunition Components for the Civilian, Law Enforcement and Military Markets/Applications";

---

[1] ACM is different from ACME, the Plaintiff.

(c) That ACM "has recently agreed to purchase an Invernizzi Stamping press capable of producing 9mm bullet casings"; and

(d) That "we intend to import this machine for use at our facilities in Covington, Georgia." (*See* Exhibit "B").

21.     On April 22, 2022, Bruderer wrote to "Atlanta Arms" to confirm that "ACM" was a private company, and further requested a copy of a document which demonstrated ACM's qualification to operate in the field of military armaments.

22.     On April 25, 2022, Gokey responded, via his "Atlanta Arms'" email, to Bruderer, "We are a privately held company." And "Are you wanting a copy of our FFL – O6 – We are a manufacturer of ammunition for firearms?" (*See* Exhibit "C").

23.     On April 26, 2022, Gokey provided Bruderer with a copy of a Federal Firearms License ("FFL") as evidence of "Atlanta Arms'" and/or ACM's and/or another entity's qualification to operate in the field of armaments. (*See* Exhibit "D").

24.     Per the bottom left-hand corner of the FFL provided by Gokey, yet another company, this one named "Hairy & Baxter, LLC," (believed to be H&B), was the "License Name," and "Atlanta Arms" was designated as the "Business Name," with respect to the FFL-06.   However, the "Purchasing Certification Statement" section of the FFL references "Atlanta Arms" as the licensee, with a mailing address of:

> Hairy & Baxter LLC
> Atlanta Arms
> 7129 Wheat Street
> Covington, GA 30014-

(*See id.*).

25.     Koon signed the at-issue H&B/"Atlanta Arms" FFL as the "Licensee/Responsible Person" and "CEO" on March 23, 2020. (*See id.*)

26.     On May 4, 2022, Koon represented to Bruderer, via his "Atlanta Arms" email, that H&B would now be substituted as the "licensee" and "equipment owner" of the subject press machine. (*See* Exhibit "E").

27.      Koon further stated on May 4, 2022, via his "Atlanta Arms" email, that "Specialty Cartridge and ACM are sales organizations that distribute our products . . ." and that "Hairy and Baxter is the organization that is listed and should be assigned to." (*See id.*).

28.     On June 8, 2022, Koon provided Bruderer with a signed End User Certificate ("EUC") for presentation to the Export Control Authorities in Italy. (*See* Exhibit "F").

29.     The EUC indicated the "Name of End-User" as "Hairy & Baxter," and was signed by "Jason Koon" as "CEO." (*See id.*).

30.     Plaintiff "American Components Manufacturing and Engineering, LLC" was never mentioned or discussed.

**"Atlanta Arms'" Travels to Italy**

31.    On May 13, 2022, Gokey informed Bruderer that "Atlanta Arms" would be sending "Scott Hunter," to Italy as "Atlanta Arms'" "press operator/tool and die gentleman who [would] be heading up the operation . . . ."

32.    In or around June 2022, Scott Hunter from "Atlanta Arms" traveled to Italy for in-depth training on the press machine system and to participate in the fabrication of the tooling therefore.

33.    In or around August 2022, "Atlanta Arms'" representatives traveled again to Italy for the FAT, which was successfully completed as required by the terms of the Agreement.

34.    Following the successful FAT in Italy, "Atlanta Arms" made the 60% installment payment in the amount of $787,500.00 on September 19, 2022. This payment was made on behalf of "Atlanta Arms" by wire transfer from yet another entity, "BANCLEASING, LLC."

**Delivery of the Press Machine to "Atlanta Arms"**

35.    Following the successful FAT and subsequent 60% installment payment, Bruderer moved forward with executing delivery of the press machine.

36.    On or about November 15, 2022, Bruderer confirmed with "Atlanta Arms," via Koon and Gokey, that the press machine had "set-sail . . . on [its] way to the port of Savanna[h]."

37.    On or about December 14, 2022, Gokey, on behalf of "Atlanta Arms," represented to third-party transportation company, Superior Transportation, that the delivery address for the machine was "Specialty Cartridge 9126 Industrial Blvd Covington, GA 30014."

38.    On December 15, 2022, the at-issue press machine was delivered to the "Atlanta Arms" facility located at 9126 Industrial Blvd Covington, GA 30014.

39.    In or around January 2023, representatives from Invernizzi traveled from Italy to the "Atlanta Arms" facility in Covington, GA to install the press and perform basic functionality testing.

40.    Due to the differences in material (i.e. sheets of brass for the ammunition casings) used at the FAT in Italy and the material being used at the "Atlanta Arms" facility, modification of certain components and fabrication of additional components were required to get the press machine running according to spec (i.e. because the press machine is highly precise, even slight differences in the specifications of the raw material (i.e. sheets of brass) which are fed into the machine require recalibration of the machine, a fact known to "Atlanta Arms" from the outset,

and "Atlanta Arms" could not provide raw material and/or could not provide consistent material.

41.     In or around late March 2023, after completion of the modification of certain components and fabrication of additional components, Bruderer sent their lead technicians back to the "Atlanta Arms" facility for final debugging and completion of the SAT.

42.     Bruderer scheduled the final SAT to be completed with Koon and/or Gokey on-site for observation and sign-off.

43.     On April 1, 2023, a 10-hour SAT was successfully completed at the "Atlanta Arms" facility located at 9126 Industrial Blvd Covington, GA 30014.

44.     The SAT was successful in that the press successfully ran and produced 9mm ammunition cartridges per the specifications provided by Bruderer for 10 consecutive hours at "Atlanta Arms" facility.  Bruderer is in possession of video recordation of the successful 10-hour SAT.

45.     Without notice, Koon and Gokey were deliberately absent for the SAT. The only "Atlanta Arms" representatives present for the SAT were non-executive employees.

46.     The "Atlanta Arms" employees who were present for the SAT represented they did not have the authority to sign the SAT approval document, despite the SAT being fully successful, which none of them disputed.

47.     The employees who were present at the SAT claimed they would provide the sign-off paperwork to their superiors for signature.

48.     The absence of employees/executives with authority to sign the SAT documents was "Atlanta Arms"/Koon's deliberate attempt to avoid signing-off on the SAT approval all together.

49.     "Atlanta Arms"/Koon did not reject the delivery of the press, communicate any objections to it, or provide notice of any alleged defects in the functioning of the press.

50.     Following the successful SAT on April 1, 2023, "Atlanta Arms"/Koon accepted the press machine and the third and final 30% installment became due and payable to Bruderer.

51.     Bruderer sent the invoice for the final 30% installment due on the press on May 11, 2023, with the payment being due upon receipt (or, in actuality, upon completion of the SAT).

52.     "Atlanta Arms"/Koon ignored the invoice.

53.    On June 8, 2023, Bruderer sent an additional email to Koon pursuing payment of the final installment.

54.    On June 8, 2023, in response to Bruderer's email demand for final payment, Koon – for the first time more than two months after successful SAT – claimed that the press was not working properly stating in deliberately vague fashion, "This machine isn't running. We haven't run a single part that we can market."

55.    On July 7, 2023, and July 11, 2023, Bruderer sent additional emails requesting payment of the final installment.

56.    "Atlanta Arms"/ Koon did not assert that there were any issues with the press machine to Bruderer for nearly two months following the successful SAT.

57.    "Atlanta Arms"/ Koon only claimed there were alleged issues with performance of the press machine (again, in deliberately vague fashion) after Bruderer had begun to pursue payment.

58.    At no time did "Atlanta Arms"/Koon (or any Counterclaim Defendant) reject the machine, object to the delivery and installation of the machine, or purport to terminate the Agreement.

59.    Despite a successful SAT, the acceptance of the press machine by "Atlanta Arms," and Bruderer having fully performed under the Agreement, to date,

"Atlanta Arms"/Koon has failed to make its third and final 30% installment payment, owing Bruderer €393,750.00.[2]

## **"Atlanta Arms" Is the Alter Ego of Koon**

60.     "Atlanta Arms" is not an entity, but rather is an assumed name for Koon individually.

61.     Koon filed a sworn Trade Name Registration Affidavit (the "Affidavit") for "Atlanta Arms" on October 20, 2022 with the Newton County Superior Court Clerk. (*See* Exhibit "G").

62.     The Affidavit identifies "Jason Koon" as "the owner(s) of certain business now being carried on at 9126 Industrial Blvd. Covington, Ga 30014[.] In the following Trade Name, to wit Atlanta Arms; in the nature of said business is: Ammunition Manufacturing." (*See id.*)

63.     The Affidavit names Koon as "CEO."

64.     The Affidavit does not name any business entity in which the Koon "CEO" designation applies.

65.     The Affidavit in fact does not attribute the "Atlanta Arms" trade name to *any* business entity.

---

[2] The amount owed in U.S. dollars ("USD") is determined based on the Euro ("EUR") to USD conversion rate at the time of payment.

66.    "Atlanta Arms" is exclusively linked to Koon in his individual capacity.

67.    Koon and "Atlanta Arms" are one and the same and, as Koon swears in the Affidavit, "Atlanta Arms" is just a d/b/a for him in his individual capacity.

## SCI Is Another Alter Ego of Koon

68.    Within the fine print of Koon and Gokey's "Atlanta Arms" email signatures includes the following sentence: "Material provided is strictly privileged to Specialty Cartridge, Inc."



69.     Koon owns and/or controls SCI and according to the Georgia Secretary of State, puts himself out as the CEO, CFO, and Secretary of SCI.

70.     Koon is the registered agent of SCI.

71.     SCI operates out of "Atlanta Arms"/Koon's address at 9126 Industrial Blvd Covington, GA 30014.

72.     In or around May 2023, Koon changed his email signature to read "Specialty Cartridge," while keeping the email, phone number, corporate title, and website the same as his prior "Atlanta Arms" email signature.



73.     SCI is presently a defendant in fraudulent transfer related litigation in the Superior Court of Newton County, Civil Action No. SUCV2013001854 (the "Newton County Fraud Action"), where it is alleged to be the successor/continuation of non-party "Atlanta Arms & Ammo, Inc."

74.     According to the Complaint in the Newton County Fraud Action, SCI fraudulently received funds of insiders who are avoiding creditor liability.

**Hairy and Baxter Is Another Alter Ego of Koon**

75.     Koon owns and/or controls H&B.

76.     Koon is the sole member of H&B.

77.     H&B serves as "Atlanta Arms"/ Koon's Federal Firearms License holder with the U.S. federal government.

78.     H&B operates out of "Atlanta Arms"/Koon's address at 9126 Industrial Blvd Covington, GA 30014.

79.     H&B is a Defendant in the Newton County Fraud Action, where it is alleged to be the successor/continuation of non-party "Atlanta Arms & Ammo, Inc."

80.     According to the Complaint in the Newton County Fraud Action, H&B fraudulently received funds of insiders who are avoiding creditor liability.

**<u>Non-Party Ammunition Components Manufacturing, To The Extent It Exists,<br>May Be Another Alter Ego of Koon or Gokey</u>**

81.     Non-party ACM purportedly shares the same address, telephone number and President as "Atlanta Arms."

82.      The ACM email signature for Gokey is also strikingly similar to the email signature used by "Atlanta Arms."



83.     The Georgia Sectary of State website does not identify any registered business entity under the name "American Components Manufacturing."

84.     To the extent ACM exists, it is owned and/or controlled by Koon or Gokey.

85.     ACM purportedly operates out of the same facility as "Atlanta Arms"/Koon, SCI, and H&B - 9126 Industrial Blvd Covington, GA 30014.

86.     Upon information and belief, ACM is simply another d/b/a or assumed name for Koon and/or Gokey in their individual capacity.

**Plaintiff American Components Manufacturing and Engineering, LLC Is Another Alter Ego of Jason Koon**

87.     Koon owns and/or controls ACME.

88.     Koon is the sole member of ACME.

89.     Bruderer had no awareness of ACME prior to this lawsuit.

90.     Bruderer eventually discovered that "Atlanta Arms"/Koon had used ACME to make the 10% installment payment on March 2, 2022.

91.     At no point prior to March 2, 2022 was ACME *ever* disclosed to Bruderer to be or the purchaser or a party to the Agreement.

92.     To date, Bruderer does not know what ACME is, beyond it being another of Koon's alter egos, despite it being used by "Atlanta Arms"/Koon to pursue the subject litigation against Bruderer.

## Counterclaim Defendant Jarrett Gokey

93.    Gokey holds himself out to the world as "President" of "Atlanta Arms," a non-existent business entity and mere alter ego and/or d/b/a of Koon, and is a possible general partner of Koon.

94.    Gokey was directly involved with various aspects of the subject Agreement, specifically, the importation and delivery processes.

95.    When Bruderer requested information from "Atlanta Arms" to comply with government importation regulations, Gokey provided Bruderer with the names of several of Koon's alter egos.

96.    Gokey, on behalf of "Atlanta Arms"/Koon, represented to Bruderer that:

> (a) Instead of "Atlanta Arms," ACM, a non-existent business entity, was the "end user" of the subject press machine;
>
> (b) ACM, a non-existent business entity, is a "registered American company;"
>
> (c) ACM, a non-existent business entity, "agreed to purchase" the subject press machine;
>
> (d)  ACM resides at "9126 Industrial Blvd Covington, GA 30014," the same facility location as "Atlanta Arms"/Koon;

(e) Gokey represents himself to be the "President" of ACM, a non-existent business entity;

(f) Hairy and Baxter was the "License Name" for the Federal Firearms License attributable to the "end user" of the press machine; and

(g) The subject press machine was to be delivered to "Specialty Cartridge," the same facility location as "Atlanta Arms"/ Koon.

## COUNT I - BREACH OF CONTRACT
### (AS TO "ATLANTA ARMS"/ JASON KOON)

97.    Bruderer restates and realleges each and every fact and allegation contained in the forgoing portions of this Counterclaim with the same force and effect as if fully set forth herein.

98.    Bruderer entered into the Agreement with "Atlanta Arms" for the sale of the at-issue ammunition press machine.

99.    "Atlanta Arms" is not a business entity, but rather a trade name registered to Koon as an individual.

100.   Koon and "Atlanta Arms" are one in the same, and, as Koon swears in the Affidavit, "Atlanta Arms" is just a d/b/a for him in his individual capacity.

101.   Pursuant to the Agreement, "Atlanta Arms"/Koon agreed to pay Bruderer its final 30% installment payment of €393,750.00 upon "SAT positive sign out in customer's plant."

102.   The at-issue press machine was delivered to the "Atlanta Arms" facility on or about December 15, 2022.

103.   A successful SAT was completed on or about April 1, 2023.

104.   "Atlanta Arms"/Koon has nonetheless refused to sign the SAT sign out documents in an attempt to avoid payment.

105.   To date, "Atlanta Arms"/Koon has failed to pay Bruderer the final 30% installment payment of €393,750.00.

106.   "Atlanta Arms"/Koon has failed to perform his obligations under the Agreement.

107.   As a result of "Atlanta Arms"/Koon's failure to perform his obligations under the Agreement, Bruderer has been damaged in an amount to be determined by the jury at the trial of this matter.

## COUNT II – UNJUST ENRICHMENT
## (AS TO "ATLANTA ARMS"/ JASON KOON)

108.   Bruderer restates and realleges each and every fact and allegation contained in the forgoing portions of this Counterclaim with the same force and effect as if fully set forth herein.

109.   "Atlanta Arms"/Koon has benefitted from, and will continue to be benefited by, the valuable consideration he received, and/or will continue to receive, via possession of the subject ammunition press machine.

110.   In failing to make the final 30% installment payment to Bruderer, Bruderer has conferred a benefit on "Atlanta Arms"/Koon and "Atlanta Arms"/Koon has been unjustly enriched by at least €393,750.00.

111.   Equity demands that "Atlanta Arms"/Koon disgorge or otherwise compensate Bruderer for the remaining cost of the press machine that has been unjustly received and retained by "Atlanta Arms"/Koon.

## COUNT III – QUANTUM MERUIT
## (AS TO "ATLANTA ARMS"/ KOON)

112.   Bruderer restates and realleges each and every fact and allegation contained in the forgoing portions of this Counterclaim with the same force and effect as if fully set forth herein.

113.   To the extent it is found that Bruderer did not have a contract with "Atlanta Arms"/Koon, Bruderer is entitled to damages under the theory of *quantum meruit*.

114.   By delivering the $1.5 million+ press machine to the "Atlanta Arms" facility, and with the press machine still in "Atlanta Arms"/Koon's possession, Bruderer has conferred a benefit upon "Atlanta Arms"/Koon and reasonably expected to be compensated for the value of the press machine.

115.   Bruderer is entitled to recover the value of the benefit conferred from "Atlanta Arms"/Koon.

## <u>COUNT IV - BREACH OF CONTRACT</u>
## <u>(AS TO HAIRY AND BAXTER, LLC)</u>

116.   Bruderer restates and realleges each and every fact and allegation contained in the forgoing portions of this Counterclaim with the same force and effect as if fully set forth herein.

117.   Bruderer entered into the Agreement with "Atlanta Arms"/Koon for the sale of the at-issue ammunition press machine.

118.   H&B serves as "Atlanta Arms"/ Koon's Federal Firearms License holder with the U.S. federal government.

119. Koon signed the at-issue H&B Federal Firearms License as the "Licensee/Responsible Person" and "CEO."

120. On May 4, 2022, Koon represented to Bruderer that H&B would now be the "licensee" and "equipment owner" of the subject press machine.

121. H&B is another alter ego of Koon.

122. Pursuant to the Agreement, "Atlanta Arms"/Koon agreed to pay Bruderer its final 30% installment payment of €393,750.00 upon "SAT positive sign out in customer's plant."

123. The at-issue press machine was delivered to the "Atlanta Arms"/Koon facility on or about December 15, 2022.

124. A successful SAT was completed on or about April 1, 2023.

125. "Atlanta Arms"/Koon has nonetheless refused to sign the SAT sign out documents in an attempt to avoid payment.

126. To date, "Atlanta Arms"/ Koon has failed to pay Bruderer the final 30% installment payment of €393,750.00.

127. Being that H&B is an alter ego of Koon, and Koon has held H&B out as the "owner" of the subject press machine, H&B has failed to perform its obligations under the Agreement.

128.   As a result of H&B's failure to perform its obligations under the Agreement, Bruderer has been damaged in an amount to be determined by the jury at the trial of this matter.

## COUNT V – UNJUST ENRICHMENT
## (AS TO HAIRY AND BAXTER, LLC)

129.   Bruderer restates and realleges each and every fact and allegation contained in the forgoing portions of this Counterclaim with the same force and effect as if fully set forth herein.

130.   H&B has benefitted from, and will continue to be benefited by, the valuable consideration it received, and/or will continue to receive, via possession of the subject ammunition press machine.

131.   In the absence of the final 30% installment payment that has become due and payable to Bruderer, Bruderer has conferred a benefit on H&B and H&B has been unjustly enriched by at least €393,750.00.

132.   Equity demands that H&B disgorge or otherwise compensate Bruderer for the remaining cost of the press machine that has been unjustly received and retained by H&B.

## COUNT VI – QUANTUM MERUIT
### (AS TO HAIRY AND BAXTER, LLC)

133.   Bruderer restates and realleges each and every fact and allegation contained in the forgoing portions of this Counterclaim with the same force and effect as if fully set forth herein.

134.   To the extent it is found that Bruderer did not have a contract with H&B, Bruderer is entitled to damages under the theory of *quantum meruit*.

135.   By delivering the $1.5 million+ press machine to the "Atlanta Arms"/Koon facility, and with the press machine still in "Atlanta Arms'"/ Koon's possession, Bruderer has conferred a benefit upon H&B as the alleged "equipment owner" and alter ego of Koon and reasonably expected to be compensated for the value of the press machine.

136.   Bruderer is entitled to recover the value of the benefit conferred from H&B.

## COUNT VII - BREACH OF CONTRACT
### (AS TO SPECIALTY CARTRIDGE, INC.)

137.   Bruderer restates and realleges each and every fact and allegation contained in the forgoing portions of this Counterclaim with the same force and effect as if fully set forth herein.

138.   Bruderer entered into the Agreement with "Atlanta Arms"/Koon for the sale of the at-issue ammunition press machine.

139.   In the fine print of Koon and Gokey's "Atlanta Arms" email signatures, the following statement is made: "Material provided is strictly privileged to Specialty Cartridge, Inc."

140.   Koon is the registered agent, CEO, CFO and Secretary of SCI.

141.   SCI operates out of "Atlanta Arms"/Koon's address at 9126 Industrial Blvd Covington, GA 30014.

142.   On May 4, 2022, Koon stated that "Specialty Cartridge . . . [is a] sales organization[] that distribute[s] our products . . . ."

143.   In or around May 2023, Koon changed his email signature to read "Specialty Cartridge," while keeping the email, phone number, corporate title, and website the same as his prior "Atlanta Arms" email signature.

144.   SCI is another alter ego of Koon.

145.   Pursuant to the Agreement, "Atlanta Arms"/Koon agreed to pay Bruderer its final 30% installment payment of € 393,750.00 upon "SAT positive sign out in customer's plant."

146.   The at-issue press machine was delivered to the "Atlanta Arms" facility on or about December 15, 2022.

147.   A successful SAT was completed on or about April 1, 2023.

148.   "Atlanta Arms"/Koon has nonetheless refused to sign the SAT sign out documents in an attempt to avoid payment.

149.   To date, "Atlanta Arms"/ Koon has failed to pay Bruderer the final 30% installment payment of €393,750.00.

150.   Being that SCI is an alter ego of Koon, SCI has failed to perform its obligations under the Agreement.

151.   As a result of SCI's failure to perform its obligations under the Agreement, Bruderer has been damaged in an amount to be determined by the jury at the trial of this matter.

## COUNT VIII – UNJUST ENRICHMENT
### (AS TO SPECIALTY CARTRIDGE, INC.)

152.   Bruderer restates and realleges each and every fact and allegation contained in the forgoing portions of this Counterclaim with the same force and effect as if fully set forth herein.

153.   SCI has benefitted from, and will continue to be benefited by, the valuable consideration it received, and/or will continue to receive, via possession of the subject ammunition press machine.

154.   In the absence of the final 30% installment payment that has become due and payable to Bruderer, Bruderer has conferred a benefit on SCI and SCI has been unjustly enriched by at least €393,750.00.

155.   Equity demands that SCI disgorge or otherwise compensate Bruderer for the remaining cost of the press machine that has been unjustly received and retained by SCI.

## COUNT IX – QUANTUM MERUIT
### (AS TO SPECIALTY CARTRIDGE, INC.)

156.   Bruderer restates and realleges each and every fact and allegation contained in the forgoing portions of this Counterclaim with the same force and effect as if fully set forth herein.

157.   To the extent it is found that Bruderer did not have a contract with SCI, Bruderer is entitled to damages under the theory of *quantum meruit*.

158.   By delivering the $1.5 million+ press machine to the "Atlanta Arms" facility, and with the press machine still in "Atlanta Arms'"/ Koon's possession, Bruderer has conferred a benefit upon SCI as an alter ego of Koon and reasonably expected to be compensated for the value of the press machine.

159.   Bruderer is entitled to recover the value of the benefit conferred from SCI.

## COUNT X - BREACH OF CONTRACT
### (AS TO ACME)

160.   Bruderer restates and realleges each and every fact and allegation contained in the forgoing portions of this Counterclaim with the same force and effect as if fully set forth herein.

161.   Bruderer entered into the Agreement with "Atlanta Arms"/Koon for the sale of the at-issue ammunition press machine.

162.   In its Complaint, ACME alleges that it is in fact "Atlanta Arms."

163.   However, "Atlanta Arms" is not an entity, but rather a trade name registered to Koon as an individual.

164.   Koon and "Atlanta Arms" are one in the same, and, as Koon swears in the Affidavit, "Atlanta Arms" is just a d/b/a/ for him in his individual capacity.

165.   Bruderer had no awareness of Plaintiff prior to this lawsuit.

166.   Bruderer eventually discovered that "Atlanta Arms"/Koon had used ACME to make the 10% installment payment on March 2, 2022.

167.   At no point prior to March 2, 2022 was ACME *ever* disclosed to Bruderer to be or the purchaser or a party to the Agreement.

168.   To date, Bruderer does not know what ACME is, beyond it being another of Koon's alter egos, despite it being used by "Atlanta Arms"/ Koon to pursue the subject litigation against Bruderer.

169.   Pursuant to the Agreement, "Atlanta Arms"/Koon agreed to pay Bruderer its final 30% installment payment of € 393,750.00 upon "SAT positive sign out in customer's plant."

170.   The at-issue press machine was delivered to the "Atlanta Arms"/Koon facility on or about December 15, 2022.

171.   A successful SAT was completed on or about April 1, 2023.

172.   "Atlanta Arms"/Koon has nonetheless refused to sign the SAT sign out documents in an attempt to avoid payment.

173.   To date, "Atlanta Arms"/ Koon has failed to pay Bruderer the final 30% installment payment of €393,750.00.

174.   Being that ACME is an alter ego of Koon, ACME has failed to perform its obligations under the Agreement.

175.   As a result of ACME's failure to perform its obligations under the Agreement, Bruderer has been damaged in an amount to be determined by the jury at the trial of this matter.

## COUNT XI – UNJUST ENRICHMENT
### (AS TO ACME)

176.   Bruderer restates and realleges each and every fact and allegation contained in the forgoing portions of this Counterclaim with the same force and effect as if fully set forth herein.

177.   ACME has benefitted from, and will continue to be benefited by, the valuable consideration it received, and/or will continue to receive, via possession of the subject ammunition press machine.

178.   In failing to make the final 30% installment payment to Bruderer, Bruderer has conferred a benefit on ACME and ACME has been unjustly enriched by at least €393,750.00.

179.   Equity demands that ACME disgorge or otherwise compensate Bruderer for the remaining cost of the press machine that has been unjustly received and retained by ACME.

## COUNT XII – QUANTUM MERUIT
### (AS TO ACME)

180.   Bruderer restates and realleges each and every fact and allegation contained in the forgoing portions of this Counterclaim with the same force and effect as if fully set forth herein.

181.   To the extent it is found that Bruderer did not have a contract with ACME, Bruderer is entitled to damages under the theory of *quantum meruit*.

182.   By delivering the $1.5 million+ press machine to the "Atlanta Arms"/Koon facility, and with the press machine still in "Atlanta Arms'"/ Koon's/ Plaintiff's possession, Bruderer has conferred a benefit upon Plaintiff and reasonably expected to be compensated for the value of the press machine.

183.   Bruderer is entitled to recover the value of the benefit conferred from Plaintiff.

## COUNT XIII – FRAUDULENT MISREPRESENTATION
## (AS TO EACH COUNTERCLAIM DEFENDANT)

184.   Bruderer restates and realleges each and every fact and allegation contained in the forgoing portions of this Counterclaim with the same force and effect as if fully set forth herein.

185.   Counterclaim Defendants represented to Bruderer that they were either parties to the Agreement or otherwise had ownership or control of "Atlanta Arms" and/or the subject ammunition press machine.

186.   Counterclaim Defendants made the representations regarding their ownership interest or control over the ammunition press machine to induce Bruderer to enter into the Agreement and sell the ammunition press machine.

187.   Koon and Gokey initiated business with Bruderer on behalf of a company known as "Atlanta Arms."

188.   Koon represented to Bruderer that he is the "CEO" of "Atlanta Arms."

189.   Gokey represented to Bruderer that he is the "President" of "Atlanta Arms."

190.   The "Atlanta Arms" email signature for Koon and Gokey represented that "[m]aterial provided is strictly privileged to Specialty Cartridge, Inc."

191.   According to a sworn Affidavit from Koon, "Atlanta Arms" is a trade name for Koon as an individual.

192.   "Atlanta Arms" is the mere alter ego of Koon.

193.   Upon request for an "end user certificate" on "Atlanta Arms" letterhead for submission to the Italian Ministry of Defense, "Atlanta Arms" represented that a company known as ACM would be the "end user."

194.   "Atlanta Arms" further represented that ACM is a "registered American company," that "ACM has recently agreed to purchase a[]. . . press . . . ," and that ACM intends to import this machine for use at our facilities in Covington, Georgia."

195.   On April 25, 2022, Gokey responded, via his "Atlanta Arms'" email, to Bruderer, "We are a privately held company." And "Are you wanting a copy of our FFL – O6 – We are a manufacturer of ammunition for firearms?"

196.   On April 26, 2022, Gokey provided Bruderer with a copy of a Federal Firearms License ("FFL") as evidence of "Atlanta Arms'" and/or ACM's and/or another entity's qualification to operate in the field of armaments.

197.   Per the bottom left-hand corner of the FFL provided by Gokey, yet another company, this one named "Hairy & Baxter, LLC," (believed to be H&B), was the "License Name," and "Atlanta Arms" was designated as the "Business Name," with respect to the FFL-06.   The "Purchasing Certification Statement" section of the FFL references "Atlanta Arms" as the licensee, with a mailing address of:

> Hairy & Baxter LLC
> Atlanta Arms
> 7129 Wheat Street
> Covington, GA 30014-

198.   Koon signed the at-issue H&B/"Atlanta Arms" FFL as the "Licensee/Responsible Person" and "CEO" on March 23, 2020.

199.   ACM is not a registered business entity, nor does it hold a valid Federal Firearms License for manufacturing ammunition in the United States.

200.   "Atlanta Arms"/Koon later represented that H&B would now be the "licensee" and "equipment owner" of the subject press machine, as H&B was the Federal Firearms License holder.

201.   Koon further represented via his "Atlanta Arms" email that "Specialty Cartridge and ACM are sales organizations that distribute our products . . ." and that "Hairy and Baxter is the organization that is listed and should be assigned to."

202.   H&B was the entity "Atlanta Arms"/Koon assigned as the "end user" and represented to Bruderer and the Italian Government as the owner of the subject press machine.

203.   On June 8, 2022, Koon provided Bruderer with a signed EUC for presentation to the Export Control Authorities in Italy.

204.   The EUC indicated the "Name of End-User" as "Hairy & Baxter," and was signed by "Jason Koon" as "CEO."

205.   In preparing for delivery, Gokey represented to Bruderer that the delivery would be made to "Specialty Cartridge."

206.   According to ACME's Complaint, ACME, an entity never mentioned to Bruderer prior to this litigation, is "Atlanta Arms."

207.   Each of the representations made by Counterclaim Defendants were material misrepresentations of presently existing or past facts.

208.   Without the series of factual misrepresentations made by Counterclaim Defendants, Bruderer would have never entered into an Agreement for the sale of an ammunition press machine with a non-existent business entity, or any entity or individual who did not have valid federal license to manufacture ammunition in the United States and/or the ability to pay for same.

209.   Bruderer reasonably relied on Counterclaim Defendants' representations contained within the various statements and documents provided by "Atlanta Arms"/Koon and Gokey to Bruderer and to the Italian Government during the importation process.

210.   Counterclaim Defendants knew the representations were false at the time they were made.

211.   Counterclaim Defendants H&B, SCI, Gokey and ACME each knew that they were merely the alter egos of Counterclaim Defendant Koon.

212.   Counterclaim Defendants made false representations with the intent to conceal the true identity of the business entity and/or individual with ownership rights and financial obligations under the Agreement.

213.   Counterclaim Defendants made these representations to cause confusion for Bruderer and to avoid any future liability for payment under the Agreement.

214.   After investing years of time, energy and money with Counterclaim Defendants to design, manufacture, and deliver the ammunition press machine, Counterclaim Defendants have withheld the final 30% installment payment from Bruderer.

215.   Up to the filing of this instant lawsuit, Bruderer had never heard of ACME.

216.   Moreover, Bruderer had only heard of the Counterclaim Defendants H&B and SCI during the importation process when "Atlanta Arms"/Koon was forced to provide further documentation and an end user certificate to the Italian Government.

217.   Accordingly, Bruderer's reliance on Counterclaim Defendants' false representations concerning the Agreement was to the detriment of Bruderer.

218.   Counterclaim Defendants' material misrepresentations of fact with regard to the Agreement have damaged Bruderer, entitling it to an award of compensatory damages and other relief.

## COUNT XIV – NEGLIGENT MISREPRESENTATION
## (AS TO EACH COUNTERCLAIM DEFENDANT)

219.    Bruderer restates and realleges each and every fact and allegation contained in the forgoing portions of this Counterclaim with the same force and effect as if fully set forth herein.

220.    Counterclaim Defendants represented to Bruderer that they were either parties to the Agreement or otherwise had ownership or control of "Atlanta Arms"/Koon and/or the subject ammunition press machine.

221.    Koon and Gokey initiated business with Bruderer on behalf of a company known as "Atlanta Arms."

222.    Koon represented to Bruderer that he is the "CEO" of "Atlanta Arms."

223.    Gokey represented to Bruderer that he is the "President" of "Atlanta Arms."

224.    The "Atlanta Arms" email signature for Koon and Gokey represented that "[m]aterial provided is strictly privileged to Specialty Cartridge, Inc."

225.    According to a sworn Affidavit from Koon, "Atlanta Arms" is a trade name for Koon as an individual.

226.    "Atlanta Arms" is the mere alter ego of Koon.

227.   Counterclaim Defendants were subject to various duties relative to making accurate and transparent representations to Bruderer and government authorities concerning purchasing a military/law enforcement ammunition press machine.

228.   Upon request for an "end user certificate" on "Atlanta Arms" letterhead for submission to the Italian Ministry of Defense, "Atlanta Arms" represented that a company known as ACM would be the "end user."

229.   "Atlanta Arms" further represented that ACM is a "registered American company," that "ACM has recently agreed to purchase a[]. . . press . . . ," and that ACM intends to import this machine for use at our facilities in Covington, Georgia."

230.   On April 25, 2022, Gokey responded, via his "Atlanta Arms'" email, to Bruderer, "We are a privately held company." And "Are you wanting a copy of our FFL – O6 – We are a manufacturer of ammunition for firearms?"

231.   On April 26, 2022, Gokey provided Bruderer with a copy of a Federal Firearms License ("FFL") as evidence of "Atlanta Arms'" and/or ACM's and/or another entity's qualification to operate in the field of armaments.

232.   Per the bottom left-hand corner of the FFL provided by Gokey, yet another company, this one named "Hairy & Baxter, LLC," (believed to be H&B),

was the "License Name," and "Atlanta Arms" was designated as the "Business

Name," with respect to the FFL-06.   The "Purchasing Certification Statement"

section of the FFL references "Atlanta Arms" as the licensee, with a mailing address

of:

> Hairy & Baxter LLC
> Atlanta Arms
> 7129 Wheat Street
> Covington, GA 30014-

233.   Koon signed the at-issue H&B/"Atlanta Arms" FFL as the

"Licensee/Responsible Person" and "CEO" on March 23, 2020.

234.   ACM is not a registered business entity, nor does it hold a valid Federal

Firearms License for manufacturing ammunition in the United States.

235.   "Atlanta Arms"/Koon later represented that H&B would now be the

"licensee" and "equipment owner" of the subject press machine, as H&B was the

Federal Firearms License holder.

236.   Koon further represented via his "Atlanta Arms" email that "Specialty

Cartridge and ACM are sales organizations that distribute our products . . ." and that

"Hairy and Baxter is the organization that is listed and should be assigned to."

237.   H&B was the entity "Atlanta Arms"/Koon assigned as the "end user"

and represented to Bruderer and the Italian Government as the owner of the subject

press machine.

238.   On June 8, 2022, Koon provided Bruderer with a signed EUC for presentation to the Export Control Authorities in Italy.

239.   The EUC indicated the "Name of End-User" as "Hairy & Baxter," and was signed by "Jason Koon" as "CEO." (*See id.*).

240.   In preparing for delivery, Gokey represented to Bruderer that the delivery would be made to "Specialty Cartridge."

241.   According to ACME's Complaint, ACME, an entity never mentioned to Bruderer prior to this litigation, is "Atlanta Arms."

242.   Each of the representations made by Counterclaim Defendants were incorrect and/or false representations of material fact.

243.   Counterclaim Defendants' incorrect and/or false representations were made without reasonable care and without reasonable consideration in providing accurate information to Bruderer with regard to the Agreement.

244.   Bruderer reasonably relied on Counterclaim Defendants' incorrect and/or false representations as true, given the statements were provided to the Italian Government, the U.S. Government, and to Bruderer by "Atlanta Arms'" purported executives.

245.   Accordingly, Bruderer's reliance on Counterclaim Defendants' incorrect and/or false representations concerning the Agreement was to the detriment of Bruderer.

246.   Counterclaim Defendants' misrepresentations with regard to the Agreement have damaged Bruderer, entitling it to an award of compensatory damages and other relief.

## COUNT XV – NEW JERSEY UCC ARTICLE 7
### (AS TO ALL COUNTERCLAIM DEFENDANTS)

247.   Bruderer restates and realleges each and every fact and allegation contained in the forgoing portions of this Counterclaim with the same force and effect as if fully set forth herein.

248.   Under the terms of the Agreement, New Jersey law applies.

249.   New Jersey Uniform Commercial Code Section 12A:2-709 provides, in relevant part, "(1) When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under the next section, the price (a) of goods accepted . . . and (3) after the buyer has wrongfully rejected or revoked acceptance of the goods or has failed to make a payment due or has repudiated (12A:2-610), a seller who is held not entitled to the price under this section shall nevertheless be awarded damages for non-acceptance under the preceding section."

250.   Section 12A:2-710 of the New Jersey Uniform Commercial Code provides, "Incidental damages to an aggrieved seller include any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach."

251.   Section 12A:708 of the New Jersey Uniform Commercial Code provides, "(1) Subject to subsection (2) and to the provisions of this Chapter with respect to proof of market price (12A:2-723), the measure of damages for non-acceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages provided in this Chapter (12A:2-710), but less expenses saved in consequence of the buyer's breach; and (2) If the measure of damages provided in subsection (1) is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this Chapter (12A:2-710), due allowance for costs reasonably incurred and due credit for payments or proceeds of resale."

252.  As set forth in detail above, all of the Counterclaim Defendants are one and the same and are alter-egos of the other.

253.  As set forth in detail above, Bruderer delivered the subject press machine according to the specifications and terms of the Agreement, with successful FAT and SAT.

254.  Counterclaim Defendants accepted the subject press machine, as defined and proscribed by the New Jersey Uniform Commercial Code.

255.  Counterclaim Defendants never rejected the subject press machine.

256.  Counterclaim Defendants now seek to improperly repudiate or revoke their acceptance of the subject press machine.

257.  In the alternative, Counterclaim Defendants improperly seek to wrongfully reject the subject press machine.

258.  As a result of the foregoing, Bruderer is entitled to damages arising under Article 7 of the New Jersey Uniform Commercial Code in an amount to be determined at trial, but not less than €393,750.00, plus incidental damages under the New Jersey Uniform Commercial Code and Bruderer's attorneys' fees incurred in this Action.

## COUNT XVI – ATTORNEYS' FEES AND COST OF LITIGTATION

259.   Bruderer restates and realleges each and every fact and allegation contained in the forgoing portions of this Counterclaim with the same force and effect as if fully set forth herein.

260.   Counterclaim Defendants' wrongful actions against Bruderer were undertaken in bad faith, have put Counterclaim Plaintiff through unnecessary trouble and expense and thereby entitle Counterclaim Plaintiff to an award of attorneys' fees and litigation expenses pursuant to O.C.G.A. §§ 9-15-14 and 13-6-11 and Fed. R. Civ. P. 11.

## COUNT XVII – PUNITIVE DAMAGES

261.   Bruderer restates and realleges each and every fact and allegation contained in the forgoing portions of this Counterclaim with the same force and effect as if fully set forth herein.

262.   Counterclaim Defendants' actions with respect to Bruderer were fraudulent, willful, and malicious, thereby entitling Counterclaim Plaintiff to an award of punitive damages pursuant to O.C.G.A. § 51-12-5.1.

WHEREFORE, Defendant and Counterclaim Plaintiff respectfully requests that this Court grant it judgment and order the following relief:

(A)   That this Court enter a judgment in favor of Bruderer and against Counterclaim Defendants;

(B)   An award of compensatory damages and punitive damages against Counterclaim Defendants in an amount to be determined by the enlightened conscience of the jury;

(C)   An award or awards of reasonable attorneys' fees and the costs for this litigation against Counterclaim Defendants;

(D)   That Bruderer be granted a trial by a jury; and

Such other further relief as this Court deems just and proper.

Respectfully submitted this 31st day of October, 2023.

O'DANIEL McDONALD, LLC

/s/ Graham E. McDonald
Graham E. McDonald
Georgia Bar No. 843090
Matthew R. Johnson
Georgia Bar No. 940675
Alexa L. Hirschfield
Georgia Bar No. 964889
9040 Roswell Road, Suite 500
Atlanta, GA 30350-3939
(404) 419-6300
(404) 419-6301 (fax)
gmcdonaldl@odmclaw.com
mjohnson@odmclaw.com
ahirschfield@odmclaw.com

*Attorneys for Defendant and*

*Counterclaim Plaintiff Bruderer Machinery, Inc.*

KAPLAN LEVENSON P.C.

/s/ Steven M. Kaplan
Steven M. Kaplan
New Jersey Bar ID (037441992)
930 Sylvan Avenue
Suite 100
Englewood Cliffs, NJ 07632
201-646-9400 (x110)
smk@kaplev.com

*(Pro Hac Vice)*
*Co-Counsel to Defendant and Counterclaim Plaintiff Bruderer Machinery, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served the Plaintiff's counsel of record with a copy of the within and foregoing FIRST AMENDED COUNTERCLAIM using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

H. Michael Dever
Hayes M. Dever, Jr.
DAME LAW, P.C.
1867 Independence Square
Suite 201
Atlanta, GA 30338
mdever@damelawpc.com
hdever@damelawpc.com

This 31st day of October 2023.

/s/ Graham E. McDonald
Graham E. McDonald

9040 Roswell Road, Suite 500
Atlanta, GA 30350
(404) 419-6300
(404) 419-6301 (fax)
gmcdonald@odmclaw.com